IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| JERRY HERING, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 15-CV-02440-JEJ |
| RITE AID CORPORATION, JOHN T. STANDLEY, DAVID R. JESSICK, JOSEPH B. ANDERSON, JR., BRUCE G. BODAKEN, KEVIN E. LOFTON, MYRTLE S. POTTER, MICHAEL N. REGAN, FRANK A. SAVAGE, MARCY SYMS, WALGREENS BOOTS ALLIANCE, INC., STEFANO PESSINA, and GEORGE R. FAIRWEATHER, | ) ) ) ) ) ) ) ) ) ) ) | (Hon. John E. Jones III) |
| Defendants. | | |

## THE WALGREENS DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................2

    I.    The Amended Complaint Must Be Dismissed Because Plaintiff Fails
          To Plead A Strong Inference Of Scienter. ...........................................2

    II.   The Amended Complaint Must Be Dismissed Because Plaintiff Fails
          To Allege That The Walgreens Defendants Made False Or Misleading
          Statements. ...........................................................................................7

    III.  Plaintiff Does Not State A Claim For Control Person Liability Under
          Section 20(a)......................................................................................13

CONCLUSION .................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) ........................................................................5, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................2

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ...............................................................................8

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ............................................................................................12

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) .............................................................................12

*In re Cambrex Corp. Sec. Litig.*,
  2005 WL 2840336 (D.N.J. Oct. 27, 2005) ..........................................................4

*In re Discovery Labs. Sec. Litig.*,
  276 F. App'x 154 (3d Cir. 2008) ........................................................................11

*In re Discovery Labs. Sec. Litig.*,
  2007 WL 789432 (E.D. Pa. Mar. 15, 2007) ......................................................11

*Frater v. Hemispherx Biopharma, Inc.*,
  996 F. Supp. 2d 335 (E.D. Pa. 2014).....................................................................7

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)......................................................................................13, 14

*Lane v. Page*,
  581 F. Supp. 2d 1094 (D.N.M. 2008)..................................................................14

*In re MannKind Sec. Actions*,
  835 F. Supp. 2d 797 (C.D. Cal. 2011) .............................................................5, 7

*N.Y. Cent. Mut. Ins. Co. v. Edelstein*,
  637 F. App'x 70 (3d Cir. 2016) ...........................................................13

*N.Y. Cent. Mut. Ins. Co. v. Edelstein*,
  2015 WL 412519 (M.D. Pa. Jan. 30, 2015)........................................13

*Podany v. Robertson Stephens, Inc.*,
  318 F. Supp. 2d 146 (S.D.N.Y. 2004) ..................................................4

*Rubinstein v. Gonzalez*,
  241 F. Supp. 3d 841 (N.D. Ill. 2017)...........................................10, 11

*Rubinstein v. Gonzalez*,
  2016 WL 1213931 (N.D. Ill. Mar. 29, 2016) ..............................10, 11

*S.E.C. v. Goldstone*,
  2015 WL 5138242 (D.N.M. Aug. 22, 2015) .........................................5

*S.E.C. v. Pirate Inv'r LLC*,
  580 F.3d 233 (4th Cir. 2009) ................................................................4

*In re Sprint Corp. Sec. Litig.*,
  232 F. Supp. 2d 1193 (D. Kan. 2002)...................................................6

*Steiner v. MedQuist Inc.*,
  2006 WL 2827740 (D.N.J. Sept. 29, 2006) ..........................................4

*Stratte-McClure v. Morgan Stanley*,
  784 F. Supp. 2d 373 (S.D.N.Y. 2011) ..................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................2

*In re Urban Outfitters, Inc., Sec. Litig.*,
  2016 WL 1043014 (E.D. Pa. Feb. 29, 2016) ......................................12

*In re Veritas Software Corp. Sec. Litig.*,
  2006 WL 1431209 (D. Del. May 23, 2006) ..........................................5

*In re Viropharma Inc. Sec. Litig.*,
  21 F. Supp. 3d 458 (E.D. Pa. 2014)......................................................8

*In re Viropharma, Inc. Sec. Litig.*,
   2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ...........................................................5

*Walck v. Am. Stock Exch., Inc.*,
   687 F.2d 778 (3d Cir. 1982) ...............................................................................12

*Weiner v. Quaker Oats Co.*,
   129 F.3d 310 (3d Cir. 1997) .................................................................................3

*Winer Family Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ...............................................................................12

**Statutes**

15 U.S.C. § 77z-2 ...........................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................2

Local Rule 7.8(a) ...........................................................................................................1

The Walgreens Defendants submit this Reply in support of their Motion to Dismiss Plaintiff's Amended Complaint and accompanying memorandum (the "Walgreens Memorandum" or "WBA Mem."),[1] and hereby join in and fully incorporate the Rite Aid Defendants' Reply in support of their Motion to Dismiss the Amended Complaint.[2]

## INTRODUCTION

Plaintiff's Opposition[3] barely addresses, let alone refutes, the compelling arguments set forth in the Walgreens Memorandum.  Instead, it resorts to repeating the Amended Complaint's demonstrably baseless allegations.  Plaintiff has now had years to formulate his claims, and yet he still cannot identify *any* specific facts showing that the Walgreens Defendants either intended to deceive Rite Aid stockholders or made false statements to Rite Aid stockholders.  Indeed, Plaintiff readily admits, "Investors and securities analysts **knew** there was a significant risk that the Merger would not pass antitrust review."  (Pl. Opp. at 1 (emphasis added).)

---

[1] Unless defined herein, all terms have the meaning set forth in the Walgreens Memorandum.

[2] Plaintiff misapplies Local Rule 7.8(a) ("No brief may incorporate by reference all or any portion of any other brief.").  Defendants' briefs stand on their own entirely; Defendants simply join in each other's distinct but related arguments in order to avoid burdening the Court with duplicative briefing.

[3] Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Complaint ("Plaintiff's Opposition" or "Pl. Opp.").

This admission, and others scattered throughout Plaintiff's Opposition, only reaffirm that his claims do not survive under the PSLRA.[4]  This case must be dismissed.

## ARGUMENT

I.   **The Amended Complaint Must Be Dismissed Because Plaintiff Fails To Plead A Strong Inference Of Scienter.**

It is Plaintiff's burden to adequately plead that the Walgreens Defendants knowingly and intentionally deceived shareholders – that they *intended* to *defraud*. Otherwise this case must be dismissed.  For the reasons set forth in the Walgreens Memorandum (WBA Mem. at 11-17), Plaintiff comes nowhere near establishing the requisite "strong inference" – meaning an inference that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent" – that the Walgreens Defendants acted with scienter.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  In fact, Plaintiff's Opposition does not even respond to the opposing inferences of nonfraudulent intent offered by the Walgreens Defendants, instead repeating the weak (and sometimes contradictory)

---

[4] Plaintiff misleadingly suggests that the "plausibility" pleading standard under Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), applies to Plaintiff's claims.  (Pl. Opp. at 8.)  Because Plaintiff's claims arise under Section 10(b) of the Exchange Act and Rule 10b-5, as well as Section 20(a) of the Exchange Act, there is no dispute that this action is governed by the PSLRA, which sets forth heightened and exacting pleading standards for private rights of action brought under the Exchange Act. (WBA Mem. at 10.)

allegations of the Amended Complaint.[5]   (WBA Mem. at 14-17; *cf.* Pl. Opp. at 48-50, 52-53.)

"Scienter" is a state of mind "embracing intent to deceive."  (Pl. Opp. at 41.) Accordingly, Plaintiff's assertion that establishing intent to deceive "is not Plaintiff's theory here," and that "the entire premise" of the Walgreens Defendants' arguments disputing intent is therefore "flawed," not only makes no sense but is inconsistent with Plaintiff's own allegations in the Amended Complaint.  (Pl. Opp. at 52; *cf.* AC ¶ 143.)  Regardless, Plaintiff still fails to explain by what logic Walgreens would both deliberately seek to inflate Rite Aid's stock price while simultaneously seeking to acquire Rite Aid at a depressed price. (WBA Mem. at 12-13; *cf.* Pl. Opp. at 53.)[6]

---

[5] For instance, Plaintiff repeats the allegation that the timing of the *Bloomberg* article's "revelation of truth . . . casts doubt on [Defendants'] innocence."  (Pl. Opp. at 48.)  Plaintiff does not acknowledge the Walgreens Defendants' argument that the more compelling inference to draw from the temporal proximity between various representations made by various groups of people is that the Walgreens Defendants' statements were truthful when made and were revised as they learned circumstances had changed.  (WBA Mem. at 16-17.)

[6] Plaintiff does not even try to suggest a more compelling motivation for the Walgreens Defendants to mislead Rite Aid stockholders other than a generic and unsupported desire to protect Defendant Pessina's "strong deal-making reputation."  (Pl. Opp. at 50; *cf.* WBA Mem. at 13-14.)  This alleged "motive" makes no sense given that this was a public company deal, and any regulatory issues would become public in the ordinary course.  Nor is the case Plaintiff cites at all relevant to his argument.  *Cf. Weiner v. Quaker Oats Co.*, 129 F.3d 310, 318 n.8 (3d Cir. 1997) (involving motive allegations that management sought "to inflate the price of Quaker stock, fend off a widely-rumored potential takeover, and

Plaintiff unsuccessfully seeks to differentiate this action from the "typical[]" case in an effort to avoid the demanding burden of pleading a strong inference of scienter, arguing that the "subjective falsity" of the Walgreens Defendants' opinions establishes scienter.  (Pl. Opp. at 42-43.)  But Plaintiff fails to show that any opinion was subjectively false – he has pleaded no specific facts indicating that the Walgreens Defendants knew their statements were false at the time they were made.[7]  (WBA Mem. at 14-17.)  As stated in a case Plaintiff himself cites, claims asserting "that the opinions must have been false because in hindsight it would have been more prudent to make different recommendations do not constitute the required particularized allegations of 'provable facts' supporting an inference that the opinions were not truly held."  *Podany v. Robertson Stephens, Inc.*, 318 F.

---

preserve management's own jobs").  Plaintiff claims that the Walgreens Defendants' alleged motivation is evidenced by Defendant Pessina's supposed "resistance" to questions about the transaction's viability, but the plain language of the statements at issue directly refutes this allegation.  (Pl. Opp. at 50; *cf.* WBA Mem. at 19-20, 21 n.14, 22-23 & n.15, 26-27, 28 & n.19, 31 & n.22.)

[7] *Cf. In re Cambrex Corp. Sec. Litig.*, 2005 WL 2840336, at *8, *12 (D.N.J. Oct. 27, 2005) (finding that defendants knew annual forecasts incorporating earnings from a cancelled contract were false, where the contract was contingent on FDA approval that had been denied and could not have been renegotiated that year); *Steiner v. MedQuist Inc.*, 2006 WL 2827740, at *18 (D.N.J. Sept. 29, 2006) (finding that officers engaged in a billing scheme to overcharge customers and underpay employees, and thus knew the falsity of inflated financial results); *S.E.C. v. Pirate Inv'r LLC*, 580 F.3d 233, 243 (4th Cir. 2009) (finding that stock tip writer knew his statements anticipating approval of a deal were false, where the writer lied about obtaining the information from a reliable source).

Supp. 2d 146, 156 (S.D.N.Y. 2004).[8]  Plaintiff fails to show that the Walgreens

Defendants knew of any alleged falsity of their statements.[9]

---

[8] *Cf. S.E.C. v. Goldstone*, 2015 WL 5138242, at \*244-45, \*255 (D.N.M. Aug. 22, 2015) (strong inference of scienter where the SEC presented evidence of subjective falsity, including internal communications "indicat[ing] that the Defendants were purposely trying to conceal information from KPMG and from the public"); *In re Viropharma, Inc. Sec. Litig.*, 2003 WL 1824914, at \*9 (E.D. Pa. Apr. 7, 2003) (strong inference of scienter where plaintiffs alleged with specificity that defendants had access to reports containing undisclosed facts contradictory to their statements); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809-10 (C.D. Cal. 2011) (strong inference of scienter where defendants affirmatively represented that the FDA "had accepted, or blessed, or agreed to" their methodology, when "the FDA had not, in fact, done any such thing").

[9] Because Plaintiff fails adequately to allege that the Walgreens Defendants' statements were knowingly false when made, the PSLRA's safe harbor applies to their forward-looking statements.  (WBA Mem. at 37-38; *cf.* Pl. Opp. at 39 (citing *In re Veritas Software Corp. Sec. Litig.*, 2006 WL 1431209, at \*5-7 (D. Del. May 23, 2006) (finding that the safe harbor did not apply to inflated financial forecasts where plaintiffs claimed, based on confidential witnesses' allegations, that management knowingly and improperly recognized as revenue contracts that were not yet finalized)).)  This case thus remains analogous to *In re Advanta Corp. Securities Litigation*, 180 F.3d 525, 536 (3d Cir. 1999), in which plaintiffs did "not plead any specific facts to support an inference that [anyone] had actual knowledge of [the] statement's falsity."  (WBA Mem. at 38; *cf.* Pl. Opp. at 37 n.25.)

The Walgreens Memorandum does not discuss the cautionary language accompanying the various forward-looking statements (Pl. Opp. at 40) because, under the plain language of the PSLRA, the safe harbor applies if Plaintiff fails to prove that the forward-looking statement, "if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading," or, if made by a business entity, was "made by or with the approval of an executive officer of that entity, and . . . made or approved by such officer with actual knowledge by that officer that the statement was false or misleading" (WBA Mem. at 38 n.29 (quoting 15 U.S.C. § 77z-2(c))).  *See also Advanta*, 180 F.3d at 536-37 (finding that the safe harbor applied because plaintiffs failed to allege knowledge of falsity, and not analyzing cautionary language).

Nor has Plaintiff pleaded reckless conduct.  Indeed, the Amended Complaint barely alleges recklessness, let alone establishes an "extreme departure from the standards of ordinary care."  (WBA Mem. at 17 n.10.)  The decision in *In re Sprint Corp. Securities Litigation*, 232 F. Supp. 2d 1193 (D. Kan. 2002), is thus distinguishable from this case; in fact, contrary to Plaintiff's assertion, the Walgreens Defendants *did* disclose "the risks known to them" regarding the transaction.  (WBA Mem. at 17-32; *cf.* Pl. Opp. at 47.)  In *Sprint*, plaintiffs alleged that defendants concealed from investors, among other things, the FCC's suspension of its investigation into a proposed merger pending receipt of further documentation.  232 F. Supp. 2d at 1226.  The court held that "defendants were reckless in not disclosing this information and in issuing a favorable statement about regulatory approval."  *Id.*  Here, by contrast – and as the Amended Complaint concedes – the market was informed every time Defendants faced a setback in the regulatory approval process.  For example, the FTC's second request for information was disclosed in a press release the same month in which it was received (AC ¶¶ 79-80); following the FTC's identification of geographic areas of interest, Defendants disclosed that they had initiated a process to divest stores (*id.* ¶¶ 85-87), including entering into a divestiture agreement with a third party[10] (*id.*

---

[10] Defendants' regular discussions with investors about divestitures undercut Plaintiff's repeated assertion that Defendants attempted to hide or minimize the FTC's concerns about overlapping market profiles.  (*See, e.g.*, Pl. Opp. at 1-2, 44-

¶ 96); and Defendants disclosed the instances when they extended closing dates, revised terms of the transaction, and ultimately developed a new deal structure to respond to the FTC's concerns (*id.* ¶¶ 19, 61, 88).

Plaintiff's scienter claim fails.

## II.   The Amended Complaint Must Be Dismissed Because Plaintiff Fails To Allege That The Walgreens Defendants Made False Or Misleading Statements.

Consistent with the Amended Complaint's deficiencies, Plaintiff offers no rebuttal to the Walgreens Defendants' extensive analysis of why none of the statements at issue are false or misleading.[11]  Nor could he succeed in doing so under the PSLRA's exacting requirements.[12]  (WBA Mem. at 17-37.)  Plaintiff spends dozens of pages repeating the Amended Complaint's truncated,

---

45); *cf. Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 346 (E.D. Pa. 2014) (defendants disclosed only favorable portions of the FDA's guidance and omitted cautionary warnings); *Stratte-McClure v. Morgan Stanley*, 784 F. Supp. 2d 373, 388-89 (S.D.N.Y. 2011) (defendants failed to ensure their subprime valuations were accurate despite receiving detailed questions from the SEC, "creating the inference that the Company was aware of regulatory concerns" but "recklessly ignored" them); *In re MannKind*, 835 F. Supp. 2d at 809-10.

[11] The Walgreens Memorandum addressed all statements at issue in the Amended Complaint, including those contained in paragraph 87.  (*See* WBA Mem. at 24-25 & Ex. 5; *cf.* Pl. Opp. at 18 n.17.)

[12] Plaintiff's refusal to engage with the actual facts of this case is perhaps best demonstrated by the completely unverifiable "chart" offered in Plaintiff's Opposition, which purports to establish that Defendants concealed information from Rite Aid stockholders but is based on no identifiable data.  (Pl. Opp. at 17.) The Court should disregard the chart.

mischaracterized versions of the Walgreens Defendants' statements, baselessly

attributing to the Walgreens Defendants an impossible level of insight into the

FTC's internal decision-making process.[13]  (Pl. Opp. at 9-36.)  But the Walgreens

Defendants professed no such clairvoyance, instead regularly informing Walgreens

stockholders of the evolving regulatory risks that the deal faced and the steps being

taken to address them.  (WBA Mem. at 18-32.)[14]

Plaintiff concedes as much:  "Investors and securities analysts *knew* there

was a significant risk that the Merger would not pass antitrust review."  (Pl. Opp.

---

[13] Plaintiff asserts that the Walgreens Defendants' argument "that they never claimed they knew what the FTC would do . . . misses the point."  (Pl. Opp. at 45 n.27.)  But this is the crux of the Amended Complaint, given that Plaintiff cannot point to any specific facts contradicting the Walgreens Defendants' statements. (*See, e.g.*, AC ¶ 94 (alleging that Defendant Fairweather claimed to be "'very clear' that the deal would pass regulatory review within the divestiture cap"); *id.* ¶ 96 (alleging that the Walgreens Defendants assured the market that "the Original Merger was close to receiving the necessary regulatory approvals"); *id.* ¶ 100 (alleging that Defendant Pessina "reassur[ed] investors that the Revised Merger Agreement would be more likely to satisfy regulators").)

[14] Defendants do not "urge alternative" readings of the statements at issue.  (Pl. Opp. at 36.)  The Walgreens Memorandum simply presents the plain language of these statements in their full context, all of which are referenced in or integral to the Amended Complaint, and Plaintiff has offered no reasonable competing interpretations.  There are thus no "factual disputes" here (*id.*) inappropriate for a motion to dismiss.  *Cf. In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 470 n.20 (E.D. Pa. 2014) (declining to consider defendants' "coloring of this case as 'fraud-by-hindsight'" where plaintiff "crafts a narrative that is sufficient to survive a Motion to Dismiss").  The other case on which Plaintiff relies actually refutes his position.  There, the court thoroughly analyzed defendants' interpretation of statements on a motion to dismiss.  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985-87 (9th Cir. 2008).

at 1 (emphasis added).)  This makes sense – the context of virtually every

statement at issue here was that regulatory approval *had not yet been received*.

Plaintiff is unable to dispute the facts showing that Defendants responded to the

FTC's developing concerns and demands, revising the terms of the deal and

proposing new structures until their efforts to effectuate a transaction were

successful – and that Walgreens investors were kept apprised of all of this.  (WBA

Mem. at 4-6, 17-37.)[15]  Moreover, the statements show that Walgreens investors

were kept apprised of the progress of the transaction and the anticipated timeline.

(*See, e.g.*, WBA Mem. at 24-25.)  There is no basis in fact – and Plaintiff does not

offer any – for Plaintiff's newly created "chart" alleging that the transaction's

"[l]ikelihood of [a]pproval" differed from Defendants' statements (Pl. Opp. at 17),

or that Defendants "knew that the regulatory process was not proceeding . . . on the

timeline . . . represented" (*id.* at 20-21).  (*See* WBA Mem. at 4-6, 17-37.)  Plaintiff

---

[15] Even in Plaintiff's misleading, shortened versions of the Walgreens Defendants' statements, it is clear that the Walgreens Defendants warned Walgreens investors of the uncertainty of approval and the hurdles Defendants had to clear in order to obtain it.  (*See, e.g.*, Pl. Opp. at 15 (statement no. 11 alerting investors to the FTC's second request); *id.* at 16 (statement no. 16 reminding investors that the regulatory approval process was still progressing); *id.* at 20 (statement no. 22 increasing the estimated number of divestitures); *id.* at 23-24 (statement no. 24 noting the many questions the FTC was posing); *id.* at 24 (statement no. 28 acknowledging the delayed time line); *id.* at 26 (statement no. 34 acknowledging the further delayed time line); *id.* at 30 (statement no. 40 informing investors of ongoing discussions with the FTC); *id.* at 31 (statement no. 43 describing revisions to the transaction in an attempt to satisfy the FTC); *id.* at 33-34 (myriad statements cautioning investors).)

has not established that any statement was objectively or subjectively false, or that the Walgreens Defendants omitted information.

Plaintiff also has not alleged any facts disputing that the Walgreens Defendants sincerely believed the statements they made at the time they made them, or suggesting that the Walgreens Defendants possessed specific knowledge that would contradict any of the information shared with Walgreens investors.[16] (WBA Mem. at 14-17.)  Accordingly, this case is not analogous to *Rubinstein v. Gonzalez*, which involved AbbVie's termination of a merger once it could no longer effect a tax inversion.  2016 WL 1213931 (N.D. Ill. Mar. 29, 2016); 241 F. Supp. 3d 841 (N.D. Ill. 2017).  In *Rubinstein*, AbbVie's CEO expressed enthusiasm about the deal to the target's employees and assured them that integration was underway, despite the fact that the tax rules had recently changed to prohibit corporate inversion.  2016 WL 1213931, at *10.  The court found this statement false or misleading because it was made after "Defendants could have

---

[16] The FTC Commissioner's letter (Pl. Opp. Ex. A), issued after the transaction received approval, does not demonstrate the falsity of the Walgreens Defendants' statements.  The letter discusses the Commissioner's lingering competition concerns, which the FTC considered resolved in the final, approved transaction. As discussed, the Walgreens Defendants never concealed the FTC's concerns about market overlap and related issues from Walgreens investors.  *See supra* note 10 and accompanying text.  Indeed, the letter expressly acknowledges that Defendants responded to and disclosed to investors the FTC's competition concerns about an earlier effort to effect a Walgreens-Rite Aid transaction.  (Pl. Opp. Ex. A at 2.)

known that the transaction would not result in the tax savings AbbVie had
expected." *Id.*[17]   The court then found that the CEO had acted recklessly, since
when he spoke "AbbVie was in the process of analyzing whether to walk away
from the deal in light of the tax rule changes," and another employee later admitted
that the CEO's intention was to falsely "appease worried . . . employees."  241 F.
Supp. 3d at 856.  None of these facts is present here.

Nor do Plaintiff's wild mischaracterizations of the Walgreens Defendants'
expressions of optimism refute that they are nonactionable statements.  (WBA
Mem. at 18-25; *cf.* Pl. Opp. at 33-36.)  Plaintiff attempts to distinguish such
statements from the corporate optimisms in another case on the basis that, here,
"Defendants were successful in misleading the market" (Pl. Opp. at 35) – but
Plaintiff has already conceded that "[i]nvestors and securities analysts knew there
was a significant risk that the Merger would not pass antitrust review" (*id.* at 1; *see
also id.* at 11-12).  *See In re Discovery Labs. Sec. Litig.*, 2007 WL 789432, at *3
(E.D. Pa. Mar. 15, 2007), *aff'd*, 276 F. App'x 154 (3d Cir. 2008) ("It is not the role
of the courts to split hairs over *how* positively corporate executives are allowed to
describe a negative event.  It is sufficient that the markets were aware that [there]

---

[17] The court dismissed the original complaint with leave to amend because
plaintiffs had not adequately pleaded scienter.  2016 WL 1213931, at *11.

was a serious setback . . . .").[18]  Plaintiff's contradictory allegations are fatal to his

claim, and the statements in *Discovery*, *Burlington*, and *Advanta* remain analogous

to the expressions of optimism in this case.  (WBA Mem. at 18-19, 25 n.16.)

Plaintiff has not adequately alleged that any of the Walgreens Defendants'

statements were false or misleading.[19]

---

[18] Plaintiff tries to distinguish another case cited by the Walgreens Defendants on
the grounds that there, the corporate optimism "related to no objective facts."  (Pl.
Opp. at 35 n.24 (discussing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d
1410 (3d Cir. 1997)).)  That is not correct:  In *Burlington*, the officer's optimism
about continued growth was based on the undisputed, objective fact that "as of [the
date of the statement], the company's earnings had grown at a faster rate than
sales."  114 F.3d at 1427.  Likewise, here, the Walgreens Defendants' optimistic
expectations were based on their contemporaneous interactions with the FTC, all
as disclosed to Walgreens investors.  (WBA Mem. at 18-25; *see Advanta*, 180 F.3d
at 539 (refusing to find liability for "non-actionable expressions of optimism for
the future")).)

[19] Moreover, Plaintiff lacks standing to pursue a 10(b) claim against the Walgreens
Defendants based on alleged misstatements made after August 16, 2016, the last
date of any purchase or sale of Rite Aid securities.  (WBA Mem. at 32 n.23.)  The
cases cited by the Walgreens Defendants remain directly on point.  In one case, the
Third Circuit decided its review must be limited to allegations that the securities
laws were violated "in connection with plaintiffs' *purchases* of Trans-Lux stock,"
and not with plaintiffs' retention of such stock, since the Exchange Act and Rule
10b-5 "authorize liability *only* for conduct occurring 'in connection with the
purchase or sale of any security.'"  *Walck v. Am. Stock Exch., Inc.*, 687 F.2d 778,
790 (3d Cir. 1982) (emphases added) (citing *Blue Chip Stamps v. Manor Drug
Stores*, 421 U.S. 723 (1975)).  Likewise, in another case, the Third Circuit held that
plaintiff lacked standing to pursue the "alleged additional misleading or incomplete
statements made by [defendant] *after it bought its shares*."  *Winer Family Tr. v.
Queen*, 503 F.3d 319, 324 n.1 (3d Cir. 2007) (emphasis added).  Plaintiff's attempt
to distinguish these cases on the grounds that "the plaintiff did not make any
purchases during the class period" is thus inaccurate.  (Pl. Opp. at 57.)  Further,
Plaintiff's reliance on *In re Urban Outfitters, Inc., Securities Litigation*, 2016 WL

### III.   Plaintiff Does Not State A Claim For Control Person Liability Under Section 20(a).

Because Plaintiff has not sufficiently alleged an underlying violation of Section 10(b), his Section 20(a) claim fails as well.  (WBA Mem. at 38-39.) Plaintiff has also failed to establish that the Walgreens Defendants had "ultimate authority" (AC ¶ 41) over Rite Aid's statements (which, in any case, were not false), since Walgreens's ability to review and comment on Rite Aid's filings (*id.* ¶¶ 69, 78) does not equate to "making" the statement under Rule 10b-5, as Walgreens did not possess the requisite control.  (WBA Mem. at 39 (citing *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011)).)

Plaintiff's new argument about "contractual control" was not pleaded in the Amended Complaint; "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *N.Y. Cent. Mut. Ins. Co. v. Edelstein*, 2015 WL 412519, at *13 (M.D. Pa. Jan. 30, 2015), *aff'd*, 637 F. App'x 70 (3d Cir. 2016) (alteration in original) (citation omitted).  Regardless, the argument fails:  As Plaintiff concedes, Defendants agreed only that Walgreens would make strategic decisions, lead discussions, and coordinate activities "with respect to any requests that may be made by, or any actions . . . that may be sought

---

1043014 (E.D. Pa. Feb. 29, 2016), a class certification order, is unavailing because the quoted portions concern typicality, and the court did not address standing.  *Id.* at *2 n.2.

by or from, the FTC." (Pl. Opp. at 56).  Walgreens was plainly not afforded

"ultimate authority over [each Rite Aid] statement, including its content and

whether and how to communicate it." *Janus*, 564 U.S. at 142.  Indeed, Rite Aid's

2015 Proxy goes on to say that Walgreens's abilities were "*in each case subject to*

*good faith consultations with Rite Aid reasonably in advance and consideration of*

*Rite Aid's views and subject to the provisions of the merger agreement.*" (Rite Aid

2015 Proxy at 101 (emphasis added); *see also id.* at A-41 through -42).  This case

thus differs from *Lane v. Page*, 581 F. Supp. 2d 1094 (D.N.M. 2008), in which a

merger agreement afforded an acquiror broad "power to direct or cause the

direction of the management and policies of a person." *Id.* at 1131.  Plaintiff has

not stated a claim for control person liability.

## CONCLUSION

Plaintiff persists in asserting an ever-evolving set of claims against

Defendants in connection with the Walgreens-Rite Aid transaction, evidently

hoping to find one that will hold up under the exacting requirements of the PSLRA

– but none of them do.  Accordingly, the Walgreens Defendants respectfully

request that the Court dismiss the Amended Complaint with prejudice.

14

Dated:  June 7, 2018                          /s/ *Kristen R. Seeger*
                                             Kristen R. Seeger
                                             Nilofer I. Umar
                                             SIDLEY AUSTIN LLP
                                             One South Dearborn Street
                                             Chicago, Illinois 60603
                                             (312) 853-7000
                                             (312) 853-7036 (Fax)
                                             kseeger@sidley.com
                                             numar@sidley.com

                                             Thomas G. Collins
                                             BUCHANAN INGERSOLL &
                                             ROONEY PC
                                             409 North Second Street, Suite 500
                                             Harrisburg, Pennsylvania 17101
                                             (717) 237-4843
                                             (717) 233-0852 (Fax)
                                             thomas.collins@bipc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2018, the foregoing was electronically filed

with the Clerk of the Court and was also electronically served upon all counsel of

record.

Benjamin M. Mather
Deborah R. Gross
Howard J. Kaufman
Kaufman, Coren & Ress, P.C.
2001 Market Street, Suite 3900
Philadelphia, PA 19103

Christopher Gold
Mark J. Dearman
Stuart A. Davidson
Robbins, Geller, Rudman & Dowd, LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432

David T. Wissbroecker
Randall J. Baron
Robbins, Geller, Rudman & Dowd, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301

Brian P. Downey
Pepper Hamilton LLP
Suite 200, 100 Market Street
Harrisburg, PA 17108-1181

Reed R. Kathrein
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

Karl P. Barth
Hagens Berman Sobol Shapiro LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101

Robert S. Saunders
Jennifer C. Voss
Cliff C. Gardner
Jessica R. Kunz
Skadden Arps Slate Meagher & Flom LLP
One Rodney Square
920 N. King Street, 7th Floor
Wilmington, DE 19801


/s/ *Thomas G. Collins*
Thomas G. Collins