IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JERRY HERING, Individually and on Behalf of All Others Similarly Situated, | : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | NO. 1:15-cv-02440-JEJ |
| RITE AID CORPORATION, *et al.*, | : : : | |
| Defendants. | : : : | |

## THE RITE AID DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Of the Delaware Bar
(admitted *pro hac vice*):

Robert S. Saunders
Jennifer C. Voss
Cliff C. Gardner
Jessica R. Kunz
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000
(302) 651-3001 (fax)

DATED:  June 7, 2018

Brian P. Downey (PA 59891)
Simoné L. Delerme (PA 317120)
PEPPER HAMILTON LLP
Suite 200, 100 Market Street, Box 1181
Harrisburg, Pennsylvania  17108-1181
(717) 255-1155
(717) 238-0575 (fax)
downeyb@pepperlaw.com
delermes@pepperlaw.com

*Attorneys for Defendants Rite Aid Corporation, John T. Standley, David R. Jessick, Joseph B. Anderson, Jr., Bruce G. Bodaken, Kevin E. Lofton, Myrtle S. Potter, Michael N. Regan, Frank A. Savage and Marcy Syms*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................. 1

ARGUMENT .................................................................................... 4

I. CLAIMS AGAINST THE RITE AID DEFENDANTS ARE
MANUFACTURED, AND INCONSISTENT WITH OTHER
STATEMENTS MADE BY PLAINTIFF TO THIS COURT. ...................... 4

II. PLAINTIFF FAILS TO PLEAD ANY MATERIAL
MISSTATEMENT OR OMISSION. .................................................. 6

    A. The Rite Aid Defendants Cannot Be Liable For Statements
They Did Not Make ................................................................. 6

    B. Plaintiff Fails To Plead Any Actionable Opinion. ...................... 7

        1. Plaintiff fails to plead falsity. ...................................... 7

        2. Plaintiff fails to plead any false embedded facts. ........ 13

        3. Plaintiff fails to plead that the characterization of the
"Second Request" was false when made. .................... 14

    C. The Opinions Are Protected By The PSLRA Safe Harbor. ........ 15

        1. The opinions are forward-looking. .............................. 15

        2. Plaintiff fails to plead actual knowledge of any falsity. ........... 17

        3. The opinions are accompanied by meaningful cautionary
language. .................................................................. 18

III. PLAINTIFF FAILS TO PLEAD SCIENTER. ................................... 20

IV. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION. ......................... 22

V. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(a). ...... 22

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*In re Amarin Corp. PLC.*,
    C.A. No. 13-CV-6663 FLW TJB, 2015 WL 3954190
    (D.N.J. June 29, 2015) ................................................................22

*In re Amarin Corp. PLC Sec. Litig.*,
    689 F. App'x 124 (3d Cir. 2017) .................................................5

*Bauer v. Eagle Pharm., Inc.*,
    C.A. No. 16-3091(JLL), 2017 WL 2213147
    (D.N.J. May 19, 2017) ....................................................15, 16, 17

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ......................................................10

*In re Enzymotec Sec. Litig.*,
    C.A. No. 14-5556(JLL)(MAH), 2015 WL 8784065
    (D.N.J. Dec. 15, 2015) ................................................................16

*Frater v. Hemispherix Biopharma, Inc.*,
    996 F. Supp. 2d 335 (E.D. Pa. 2014) .........................................21

*Gillis v. QRX Pharma Ltd.*,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016) ........................................10

*Hoey v. Insmed, Inc.*,
    Civ. A. No. 16-4323 (FLW), 2018 WL 902266
    (D.N.J. Feb. 15, 2018) .........................................................*passim*

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ..................................................17, 18

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)..................................................................1, 7

*Knurr v. Orbital ATK Inc.*,
  276 F. Supp. 3d 527 (E.D. Va. 2017) ............................................................9

*In re Lucent Techs., Inc. Sec. Litig.*,
  217 F. Supp. 2d 529 (D.N.J. 2002)..............................................................16

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002) ................................................................13, 23

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S.Ct. 1318 (2015)..................................................................................18

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015) ....................................................11, 12

*In re Sprint Corp. Securities Litigation*,
  232 F. Supp. 2d 1193 (D. Kan. 2002) ..........................................................21

*In re Stone & Webster, Inc. Securities Litigation*,
  414 F.3d 187 (1st Cir. 2005)........................................................................17

*In re Weight Watchers Int'l, Inc. Sec. Litig.*,
  14-cv-1997(LAK), 2016 WL 2757760
  (S.D.N.Y. May 11, 2016) ............................................................................14

*Winer Family Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ..........................................................................7

## STATUTES

15 U.S.C. §78u-4(b)(1) ............................................................................................1

**INTRODUCTION**[1]

In the Opening Brief, the Rite Aid Defendants set forth the myriad of reasons why the Amended Complaint must be dismissed.  Plaintiff's arguments against dismissal fail.

To start, Plaintiff mistakenly suggests measuring the conclusory securities fraud allegations in the Amended Complaint against the pleading standards of Rule 8 rather than the heightened and exacting standards of Rule 9(b) and the PSLRA, in contravention of controlling statutory law.  15 U.S.C. §78u-4(b)(1).  (OB 23-24).  Plaintiff then violates clear U.S. Supreme Court authority by attributing the statements of others to the Rite Aid Defendants.  *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  The Rite Aid Defendants cannot be liable for the statements of others, a point which Plaintiff sheepishly acknowledges only by footnote in the Answering Brief, despite generally lumping all "Defendants" together throughout.

The handful of mundane statements made by Rite Aid that are actually being challenged in this action all occurred in late 2015, in SEC filings.  As Plaintiff concedes, most were made well before the Merger was even submitted to the FTC for review, and all were made before the *post-December 2015* statements that

---

[1] Capitalized terms herein are defined in the Rite Aid Defendants' Opening Brief, which is cited as "OB __."  (Doc. 100).  "AB" refers to Plaintiff's Answering Brief.  (Doc. 106).

Plaintiff asserts "falsely portrayed the 'progress' of the regulatory process and the nearness of regulatory approval." (AB 16).[2]

All of the challenged Rite Aid statements are *opinions* concerning the regulatory review process. As a matter of law, these opinions are nonactionable. Plaintiff implicitly concedes this point by failing to identify a single particularized fact in the Amended Complaint indicating that the Rite Aid Defendants believed the opinions to be false when made in 2015.

Plaintiff tries to mask these failings by relying on legally defective "fraud-by-hindsight" theories, as well as badly misquoted documents that are not even referenced in the Amended Complaint.

Further, Plaintiff offers no basis for disregarding the PSLRA safe harbor protection for the forward-looking opinions. He also excises the cautionary language that accompanied the challenged opinions in the 2015 SEC filings. (For the Court's convenience, the challenged opinions and the accompanying cautionary language are set forth in a chart attached hereto as <u>Exhibit A</u>.)

---

[2] The following documents comprise the "SEC filings," in which the challenged Rite Aid opinions are made: Am.Compl. ¶64 ("Transaction Announcement" filed 10/28/2015), ¶¶65-66 ("Script" and "FAQs" filed 10/29/2015), ¶80 ("Second Request Announcement" filed 12/14/2015), ¶69 ("2015 Proxy Statement" filed in preliminary form, and then in definitive form on 12/21/2015).

Plaintiff also fails to show, as is required, that the Amended Complaint alleges particular facts giving rise to a strong inference that the Rite Aid Defendants intended to deceive investors (scienter).

Finally, the Answering Brief betrays Plaintiff's theory that the Rite Aid Defendants duped stockholders by minimizing the risk associated with regulatory approval.  Plaintiff asserts in the Answering Brief that in 2015:  "Investors and securities analysts knew there was a significant risk that the Merger would not pass antitrust review."  (AB 1).  Indeed, Plaintiff's original December 2015 complaint, filed after the challenged statements were made, says that *Plaintiff himself* believed regulatory approval was "highly unlikely."  (Doc. 1 ¶59).  These admissions make clear that Plaintiff could not and has not pled the elements of a §10(b) claim, including the existence of any reasonably relied upon misrepresentation in connection with a purchase/sale of securities.

Dismissal with prejudice is warranted.

## ARGUMENT

### I.   CLAIMS AGAINST THE RITE AID DEFENDANTS ARE MANUFACTURED, AND INCONSISTENT WITH OTHER STATEMENTS MADE BY PLAINTIFF TO THIS COURT.

With respect to the Rite Aid Defendants, Plaintiff's theory in the Answering Brief is that Rite Aid's 2015 SEC filings fraudulently minimized regulatory risk. Even a cursory review of the history of this litigation reveals this theory to be an opportunistic reversal of position by Plaintiff, supporting dismissal with prejudice.

*2015.* After Rite Aid made its 2015 SEC filings – which contain the complete universe of alleged misstatements for which the Rite Aid Defendants stand accused – Plaintiff filed his original complaint. In it, Plaintiff (far from being misled) stated his own belief that the proposed transaction "will certainly face regulatory scrutiny" and "is highly unlikely to be approved by regulators." (Doc. 1 ¶¶9, 47, 59). Notwithstanding his having submitted these statements to the Court, Plaintiff tellingly did not assert that the SEC filings downplayed regulatory risk, let alone gave rise to a securities fraud claim in that original complaint. Instead, Plaintiff alleged only an implausible §14 claim based on purported financial omissions in the 2015 Proxy Statement. That claim was not colorable, was rejected by the Court on a motion for preliminary injunction and withered with the termination of the Merger.

***2016.*** In April 2016, only a few months after Plaintiff filed his original complaint, Plaintiff himself (far from being deceived) again acknowledged the regulatory risk by asking this Court for a stay of the litigation because the acquisition was under antitrust review by the FTC and as a result might not be consummated. (OB 4). Throughout 2016, Plaintiff never asserted that the Rite Aid Defendants had made any false or misleading statement related to regulatory approval.

***2017.*** In 2017, with a §14 claim going nowhere fast, Plaintiff tried to latch onto the FTC's 2017 refusal to approve the Merger, looking back to 2015 and manufacturing his ill-conceived securities fraud claims against the Rite Aid Defendants. These claims require that Plaintiff sweep under the rug the fact that he never previously asserted that the 2015 SEC filings downplayed regulatory risk. This is a classic example of pleading "fraud by hindsight, something [the Third Circuit] has long rejected." *In re Amarin Corp. PLC Sec. Litig.*, 689 F. App'x 124, 132 (3d Cir. 2017) (citation omitted).

***2018.*** Now, Plaintiff contends that in 2015 *not only he* but, more broadly, "[i]nvestors and securities analysts knew there was a significant risk that the Merger would not pass antitrust review." (AB 1). To hear Plaintiff tell it, no market participant was misled into thinking that antitrust approval was likely.

(This also contradicts Plaintiff's conclusory assertion that Rite Aid artificially increased its stock price through its purported misrepresentations.)

The only reasonable inference is that investors, including Plaintiff, who allegedly believed in 2015 that regulatory approval was "highly unlikely," were not defrauded by the challenged statements in Rite Aid's 2015 SEC filings. The only deception here has been Plaintiff's two-year scheme to manufacture some claim for a lawsuit that was dead on arrival.

## II.   PLAINTIFF FAILS TO PLEAD ANY MATERIAL MISSTATEMENT OR OMISSION.

### A.   The Rite Aid Defendants Cannot Be Liable For Statements They Did Not Make.

Controlling U.S. Supreme Court authority provides: "[o]nly the maker of a statement can face Section 10(b) liability," and, thus, "the Rite Aid Defendants can face no liability for … statements made by the Walgreens Defendants." (OB 25 (citing *Janus*, 564 U.S. at 142)). Plaintiff concedes this point and acknowledges that "[l]iability only flows to the maker of each statement." (AB 9 n.7). This means that the Rite Aid Defendants cannot be liable for the statements Plaintiff

6

labels as 6-7, 11-18 and 20-44, including **all** of the challenged statements made

after December 2015, because the Rite Aid Defendants did not make them.[3]

Consequently, the vast majority of the Answering Brief does not apply to the

Rite Aid Defendants.  Plaintiff tries to skirt this obstacle by loosely referring to

"Defendants" throughout the Answering Brief, trying to blur the fact that

statements were not made by the Rite Aid Defendants but by other defendants.

This sleight of hand resembles the kind of "group pleading" rejected by the Third

Circuit.  (OB 40); *Winer Family Tr.  v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007).

### B.     Plaintiff Fails To Plead Any Actionable Opinion.

#### 1.     Plaintiff fails to plead falsity.

Plaintiff concedes that he must adequately plead that the challenged opinions

were both false and not honestly believed when made (objective and subjective

falsity).  (AB 10).  Plaintiff has not done so.

<u>First</u>, Plaintiff fails to point to any particularized facts in the Amended

Complaint indicating that the Rite Aid Defendants knew their opinions to be false

---

[3] Plaintiff suggests that one statement made after 2015 (in a press release from December 2016), which Plaintiff labels as 38, was made by Rite Aid, Walgreens and Mr. Pessina (Walgreens's CEO).  (AB 29-30).  This statement was attributed **solely to Mr. Pessina**.  (Am.Compl. ¶96).  The Rite Aid Defendants are not alleged to have had control over and, thus, cannot be liable for, this statement.  *See Janus*, 564 U.S. at 142-43.  Nor do the Rite Aid Defendants concede that this statement or any of the challenged statements of the Walgreens Defendants give rise to a securities fraud claim.

in 2015 or otherwise possessed information that contradicted their stated opinions at that time.  (*See* AB 11-13 (citing Am.Compl. ¶¶65-66, 112); *id.* 17 (citing ¶¶10, 13); *id.* 19 (citing ¶80)).

Second, Plaintiff fails to address arguments presented in the Opening Brief showing that it would be unreasonable to infer that the Rite Aid Defendants believed their opinions to be false when they made them.  For example, Plaintiff offers no response to the fact that the majority of the challenged opinions about the expectations of regulatory approval (including the statements labelled 1-5), were made nearly ***two weeks before*** the Merger partners even sought regulatory approval.  (OB 27).  Nor does Plaintiff offer any response to the fact that the last challenged opinion was made in an SEC filing ***more than four months before*** the FTC staff began identifying geographic areas of interest.  (OB 26-28).  This chronology makes pleading a false statement of opinion against the Rite Aid Defendants untenable; when Rite Aid issued the last challenged opinion, the Rite Aid Defendants could not have known the outcome of the FTC inquiry that had barely even begun.

Third, Plaintiff also fails to address the fact that Rite Aid's opinions were based on "extensive consultation with anti-trust counsel," a fact which further undercuts the conclusory assertion that Rite Aid knew its opinions were false when made.  (OB 29-30).  The challenged disclosures themselves expressly note this

"extensive consultation," but Plaintiff intentionally excises that language (as well as other language) from his recitation of the opinions.  Yet Plaintiff admits the Supreme Court directs that disclosure of consultations with legal counsel can insulate an opinion from securities fraud liability.  (*See* AB 22-23).

    Fourth, tacitly conceding the absence of particularized facts in the Amended Complaint, Plaintiff resorts to purported facts outside the pleadings, claiming that Rite Aid's opinions were objectively and subjectively false because: (i) two analysts "highlighted the substantial market overlap between Rite Aid and Walgreens stores, which would require significant divestitures" and (ii) nearly two years later FTC Commissioner McSweeny expressed concerns about Rite Aid's sale of assets to Walgreens in a transaction occurring after the termination of the Merger.  (AB 11-13).  Even if the Court considers these new documents (which it should not), they do not demonstrate that the challenged opinions were objectively or subjectively false.[4]

    Barclays's statement that the Merger would "necessitate an FTC review" is not at all inconsistent with the challenged statements, which acknowledged FTC review.  Next, Plaintiff is wrong that "Cowen and Company noted the 'significant overlap between the two companies, particularly in the northeast.'"  (AB 11-12).

---

[4] *See Knurr v. Orbital ATK Inc.*, 276 F. Supp. 3d 527, 532 (E.D. Va. 2017) (refusing to consider analysts' reports not relied upon in or integral to the complaint).

Instead – and not inconsistent with any of Rite Aid's statements – the Cowen report said that "in certain states" there is significant overlap, and suggested "it is likely divestitures would need to be made to gain FTC approval in certain states." (AB, Ex. C at 1).  This is exactly what the Original Merger Agreement contemplated and Rite Aid disclosed:  divestiture of up to 1,000 stores to satisfy antitrust review.  (Am.Compl. ¶67).  The analyst reports do not contradict Rite Aid's opinion that divestitures should be sufficient to avoid regulatory concern. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 618 (9th Cir. 2017) (finding analyst reports suggesting alternative interpretation of potential risk insufficient to show that defendants must not have believed their own opinion).

Next, Plaintiff's use of a statement by an FTC Commissioner made nearly two years after Rite Aid's last challenged opinion is a laughable red herring.  The law is clear "[t]hat [a regulatory agency] ultimately disagreed with defendants' interpretation of the data does not render their subjective assessments false or misleading." *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 598 (S.D.N.Y. 2016).  A regulatory agency's statement "published at a later date … cannot serve as a basis for undermining [the company]'s position with respect to the results of the [regulatory review]." *Hoey v. Insmed, Inc.*, Civ. A. No. 16-4323 (FLW), 2018 WL 902266, at *17 (D.N.J. Feb. 15, 2018).  Notably, Commissioner McSweeny's

statement does not even carry the weight of a "regulatory agency's statement."  It presents the views of one commissioner.  Indeed, FTC Commissioner Ohlhausen simultaneously issued a different statement, supportive of the transaction, and calling McSweeny's concerns "unfounded."[5]

In any event, Commissioner McSweeny's statements were not even about the Merger.  Rather, they were about an asset sale of 1,932 Rite Aid stores to Walgreens that occurred after the termination of the Merger, and nothing in her statement explains what information formed the basis for her stated views.  (AB, Ex. A).

Lastly, Plaintiff's reliance on the extreme set of facts and particularized pleadings set forth in *In re Petrobras Securities Litigation* is futile.  (AB 13).  There, the court found that plaintiffs had adequately alleged "that at the time the Company's management was professing its opinion that the company's internal controls were effective, that same management was well aware of the extensive corruption in the Company's procurement activities," which the court held was "sufficient to infer that the Company disbelieved the alleged statements at the time they were made."  *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380-81 (S.D.N.Y. 2015).

---

[5] (https://www.ftc.gov/system/files/documents/public_statements/1255033/1710181 _walgreens_rite_aid_statement_of_acting_chairman_ohlhausen.pdf).

Among other distinctions, the *Petrobras* complaint alleged that before and during the time the challenged statements were made:  a former manager met with the head of the energy/gas division, who reported to the CEO, to expose inflated contracts and payments for unfulfilled services; the former manager repeatedly reported problems to her superiors for five years and was ultimately fired in retaliation; the CEO formed an investigative committee that determined the company had made payments for services that were not performed; an embezzler was kept on the payroll; and corruption was uncovered by Brazilian police.  *Id.* at 374.  The *Petrobras* pleading of particularized facts is a far cry from the allegations in the Amended Complaint.

More relevant is *Hoey v. Insmed, Inc.*, a very recent case from within the Third Circuit that was litigated by Plaintiff's own counsel, but is ignored in the Answering Brief.  There, the court dismissed a lawsuit challenging opinions expressing "positive belief as to [a drug]'s regulatory approval," and alleging that the opinions were actionable "because they failed to disclose that [a study] was deeply flawed."  2018 WL 902266, at *10, *16.  The court found that plaintiff "fail[ed] to provide specific allegations wherein [the company] was informed about

any concerns with respect to the trial, *at a time before* the statements in dispute were announced to investors." *Id.* at \*17 (emphasis added).[6] So too here.

### 2.    Plaintiff fails to plead any false embedded facts.

Plaintiff argues that certain bases for the challenged opinions, specifically the complimentary market profiles of the companies (minimal level of overlap) and the amount of pharmacy counters in the US, are false "embedded facts" within the opinions.  But the sum total of Plaintiff's argument is fraud by hindsight:  "If these [embedded] facts were true, the FTC would have approved the Merger.  The fact that the FTC did not, demonstrates the falsity of these embedded facts."  (AB 14-15).  This is a legally defective argument.  "To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002); *Insmed*, 2018 WL 902266, at \*7.  The Merger was

---

[6] Plaintiff ignored *Insmed*, and failed to distinguish *M&T Bank, Amarin* and *Tongue*.  (OB 29-32).  As here, *M&T Bank* involved plaintiffs who did "not allege that Defendants had material information in their possession *at the time* ... that did not fairly align with the ... opinion," and *Amarin* involved a plaintiff who failed to allege adequately that defendants did not reasonably believe their opinion about regulatory approval.  (OB 29-32).  Plaintiff attempts to distinguish *Tongue* by arguing that he alleged receipt of "feedback" from a regulatory agency that was out of the ordinary.  (AB 14 n.12).  But the Amended Complaint admits that the first update regarding the FTC approval process came on January 26, 2016, more than a month after the last challenged statement by Rite Aid.  (Am.Compl. ¶117).

terminated having failed to receive FTC clearance *more than 18 months after* the

challenged statements were made.  (AB, Ex. A).

### 3.    Plaintiff fails to plead that the characterization of the "Second Request" was false when made.

Rite Aid characterized the Second Request as a "standard part of the

regulatory process in connection with the FTC's review."  (Am.Compl. ¶80).

Plaintiff alleges that this statement is a "characteriz[ation]."  (*Id.*; AB 15, 17).  A

"characterization" is an opinion.  *See In re Weight Watchers Int'l, Inc. Sec. Litig.*,

14-cv-1997(LAK), 2016 WL 2757760, at *7 (S.D.N.Y. May 11, 2016) (using

"characterization" and "opinion" interchangeably and finding that particular

"characterization" is an "opinion, not an objectively testable statement of fact").

Plaintiff fails to plead that this opinion was false.  (AB 10-11).  Instead, he says

that "only 3.7 percent of transactions in 2014" involved a second request.  (AB 17).

But this statistic is not in the Amended Complaint or substantiated in the

Answering Brief.  Plaintiff cites only to Commissioner McSweeny's statement,

which does not reference or support this statistic in any way.  (AB 17 n.14).

Moreover, Plaintiff fails to plead that the characterization was not honestly

believed by the Rite Aid Defendants.  Among other things, antitrust counsel

advised Rite Aid when it received the Second Request that it was "a standard part

of the regulatory process in connection with the FTC's review." (2017 Prelim.

Proxy Stmt. 59). Plaintiff offers no reasonable basis for disputing this disclosure.[7]

### C.     The Opinions Are Protected By The PSLRA Safe Harbor.

#### 1.     The opinions are forward-looking.

Plaintiff cannot refute that the challenged Rite Aid opinions are forward-

looking. They concern expectations about future results of a yet-to-occur

regulatory review process and the combination of the two companies; exactly the

kinds of statements that are protected by the PSLRA safe harbor. *See Insmed*,

2018 WL 902266, at *19 (finding that PSLRA safe harbor applies to statements

"wherein a defendant expresses the likelihood of approval by a regulatory agency")

(citing *Gillis*, 197 F. Supp. 3d at 585 (finding statements concerning FDA approval

"are classically forward-looking, as they address what defendants expected to

occur in the future")); *accord Bauer v. Eagle Pharm., Inc*., C.A. No. 16-3091(JLL),

---

[7] Plaintiff calls this disclosure "false" because it was included in the 2017 Preliminary Proxy Statement, filed on March 3, 2017, after Plaintiff already had filed his original complaint. (AB 17-18 n.15). But it was not until after the proxy statement was filed that Plaintiff first challenged, on March 17, 2017, the characterization of the Second Request. (*See* Doc. 58-2 ¶96). Plaintiff's suggestion that the disclosure was responsive to his allegations is betrayed by the actual chronology.

2017 WL 2213147, at *8-9 (D.N.J. May 19, 2017) (same).[8]  Plaintiff's tepid

contention that the challenged opinions relate to present facts or existing conditions

is wrong, and the cases he cites underscore this.[9]

Further, Plaintiff's argument that the forward-looking opinions are "mixed"

with statements of present fact, and thus, entitled to only partial safe harbor

protection has been rejected previously.  *Insmed*, 2018 WL 902266, at *19 n.17

(one would "effectively render the PSLRA's safe harbor meaningless" if a

speaker's forward-looking statement is transformed "into a non-forward looking

statement" as a result of "data sets" or "present information" that made the

---

[8] Plaintiff's unsuccessful attempt to distinguish *Burges* and *Bauer* – both of which applied the PSLRA safe harbor – is limited to repeating the relevant holding and injecting the words "simply" or "mere" into the excerpts.  For example, Plaintiff says *Bauer* "involved **mere** statements that the company would receive FDA approval."  (AB 37-38 n.25 (emphasis added)).  The statements challenged in *Bauer* and afforded the PSLRA safe harbor – including that "[w]e continue to expect an FDA decision in March 2016," and that "[w]e have every *expectation* that based on our file and the dialogue that's been ongoing that we'll get an approval" – are precisely the types of statements challenged here.  *Bauer*, 2017 WL 2213147, at *9.

[9] *Cf. In re Lucent Techs., Inc. Sec. Litig.*, 217 F. Supp. 2d 529, 557-60 (D.N.J. 2002) (statements concerning a company's "previous and then existing growth rate issues" and its "actual status within the optical networking market" were not forward-looking); *In re Enzymotec Sec. Litig.*, C.A. No. 14-5556(JLL)(MAH), 2015 WL 8784065, at *11 (D.N.J. Dec. 15, 2015) ("statements relating to [the company] being 'well positioned for future growth,' or relating to [the product] 'achieving rapid penetration' or 'increased market penetration'" were not forward-looking because they "relate to then-existing conditions as opposed to future projections").

forward-looking statement or "future projection [of approval] attainable"). *See also Bauer*, 2017 WL 2213147, at *9 ("[S]tatements anticipating FDA approval are not transformed into mixed present/future statements by virtue of references to the 'ongoing' and 'continuing' discussions with the FDA."). Similarly, in *Institutional Investors Group v. Avaya, Inc*. (cited by Plaintiff, AB 38), the Third Circuit found that the entire challenged statements were protected by the safe harbor, including the portions containing present facts that prior results were "on track" and "position us" to meet future goals. 564 F.3d 242, 255 (3d Cir. 2009). "[W]hen read in context, [those portions] cannot meaningfully be distinguished from the future projection of which they are a part." *Id.*[10]

Finally, Plaintiff contends that "omissions" are not forward-looking, but he does not assert any omission liability against the Rite Aid Defendants. (AB 9-15).

## 2.    Plaintiff fails to plead actual knowledge of any falsity.

Plaintiff argues that the opinions also do not qualify for safe harbor protection because "they were false when made and were issued without any reasonable basis." (AB 39). But, as discussed herein, Plaintiff has "not sufficiently pleaded a strong inference that defendants acted with actual knowledge

---

[10] *Avaya* distinguished Plaintiff's only other cited authority, *In re Stone & Webster, Inc. Securities Litigation*, 414 F.3d 187, 213 (1st Cir. 2005), on the grounds that "defendants in *Stone & Webster* made a claim about the company's **current** level of funding." *Avaya*, 564 F.3d at 256 (emphasis added).

that their [forward-looking statements] were false or misleading," which would still be true "even assuming defendants' cautionary language was inadequate." *Avaya*, 564 F.3d at 259; *accord Insmed*, 2018 WL 902266, at *19 n.17 (same).

### 3.    The opinions are accompanied by meaningful cautionary language.

Plaintiff ignores binding U.S. Supreme Court authority that "the analysis of whether [an] opinion is misleading must address the statement's context … mean[ing] the court must take account of whatever facts [the company] *did* provide about legal compliance, as well as any other hedges, disclaimers, or qualifications it included." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1333 (2015).  Plaintiff improperly recites truncated versions of the challenged opinions, excising cautionary language and avoiding the statements' broader context.

For example, Plaintiff recites a snippet of the Script:  "based upon the complementary nature of the market profiles of both companies, and the amount of pharmacy counters in the U. S., we do not believe the combination should cause regulatory concern."  (AB 9).  Plaintiff omits the beginning of the statement:

> It's important to keep in mind that this news is just the first step in a lengthy process. The transaction is subject to Rite Aid shareholder and regulatory approvals and other customary closing conditions. Both Rite Aid and Walgreens Boots Alliance have had extensive consultation with anti-trust counsel ….

(OB, Ex. D at Ex. 99.1 at 2).

Plaintiff recites only a portion of a similar statement in the FAQs:  "any reason why this deal wouldn't happen, such as anti-trust issues; . . . based upon the market profiles of both companies, and the amount of pharmacy counters in the U.S., we do not believe the combination should cause regulatory concern."  (AB 9-10).  The ellipsis cuts out:

> We can't speculate on the decisions of any regulatory agency, but both Rite Aid and Walgreens have had extensive consultation with anti-trust counsel ….

(OB, Ex. D at Ex. 99.3 at 1).

Plaintiff ignores the cautionary language that accompanied every single challenged opinion.  (*See* Exhibit A.)

Plaintiff also argues that the cautionary language was "generic and boilerplate" (AB 40), but cannot refute that in both *Bonomo* and *M&T Bank*, the Court found that cautionary language nearly identical to that used by Rite Aid was sufficient to qualify substantively identical challenged statements (regarding a merger's perceived closing and regulatory risk) for the PSLRA safe harbor.  (OB 34-35).  Moreover, *Insmed* involved similar cautionary statements giving rise to the PSLRA safe harbor, including, among others, that "[t]here can be no assurance ... that results from the [Phase 2 Trial] will be sufficient to obtain full or

conditional marketing approval." *Insmed*, 2018 WL 902266, at \*20.  (*Compare* OB 34-35).

## III.    PLAINTIFF FAILS TO PLEAD SCIENTER.

<u>First</u>, Plaintiff claims that he has pled particularized facts showing that the Rite Aid Defendants knew that the stated opinions were false or had access to nonpublic data demonstrating a significant overlap in Rite Aid and Walgreens businesses, thus giving rise to a strong inference of scienter.  (AB 42-43).  But as discussed herein, the Amended Complaint is entirely conclusory in this regard, and there is no well-pled allegation about the Rite Aid Defendants having access to some nonpublic data that would contravene the opinions in the 2015 SEC filings.

<u>Second</u>, Plaintiff argues that he has pled a strong inference of scienter because the Rite Aid Defendants considered regulatory risk to be important and received regular updates of negative developments in the regulatory process, including "specific concerns raised by the FTC."  (AB 43-45).  But Plaintiff alleges that the Rite Aid Defendants did not receive their first update on the FTC's review until January 26, 2016, which was well after Rite Aid's last challenged statement in December 2015.  (Am.Compl. ¶117).  Thus, Plaintiff's reliance on *In re Sprint Corp. Securities Litigation* is misplaced because *Sprint* involved allegations that defendants had communications with a regulatory agency ***before*** issuing allegedly fraudulent statements.  (AB 47).

Moreover, an allegation that regulatory risk was important, standing alone, cannot demonstrate any intent to deceive.  In *Insmed*, Plaintiff's counsel made this same argument based on allegations that the subject of the fraud was a "core business" of the company, the individual defendants had access to information and they attended meetings.  2018 WL 902266, at *22.  The Court found that these allegations were insufficient to create the requisite "strong inference of scienter." *Id.* (quoting *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 423 (D. Del. 2009)).

<u>Third</u>, Plaintiff persists in arguing that the Rite Aid Defendants were financially motivated (by change-in-control payments) to pursue a merger that they purportedly knew was unlikely to receive regulatory approval.  (AB 49).  He does not distinguish Third Circuit precedent that dispatches with this argument.[11]  (OB 36-39).  Instead, Plaintiff tries to explain away the illogic of his argument by suggesting that the Rite Aid Defendants were more likely to engage in a "foolish fraud[]," than a "clever one[]."  (AB 52 (quoting *Asher v. Baxter Int'l Inc.*, 377

---

[11] Plaintiff's authorities are inapposite.  (AB 49).  In *Sprint*, defendants allegedly "'secretly' altered" an incentive plan to receive payments upon "shareholder approval alone, irrespective of the merger's actual viability."  232 F. Supp. 2d 1193, 1202 (D. Kan. 2002).  In *Frater v. Hemispherix Biopharma, Inc.*, a founder's change-in-control payment "depart[ed] from executives' typical compensation incentives."  996 F. Supp. 2d 335, 350 (E.D. Pa. 2014).  Here, this Court and the Delaware Court of Chancery determined that "the directors' financial interests in maximizing the transaction appear to be aligned with the interests of all other stockholders."  (Doc. 42 at 9 (citation omitted)).

F.3d 727, 728 (7th Cir. 2004))). In *Insmed*, Plaintiff's counsel made a similar argument, which the court rejected, finding it "implausible" to infer that the individual defendants "engaged in a scheme to defraud investors, despite the high risks associated with such an activity" and despite that they "surely, realized that it could not indefinitely maintain a false impression." 2018 WL 902266, at *21. *See also In re Amarin Corp. PLC.*, C.A. No. 13-CV-6663 FLW TJB, 2015 WL 3954190, at *15 (D.N.J. June 29, 2015) (finding insufficient allegations of scienter where the "more plausible" inference was that executives were "simply overly optimistic about the … likelihood of [regulatory] approval"). The Court should reject this same strained argument here.

## IV.   PLAINTIFF FAILS TO PLEAD LOSS CAUSATION.

Plaintiff fails to identify any information contained in the purported corrective disclosures that the Rite Aid Defendants could have known but omitted in 2015. Therefore, Plaintiff fails to plead loss causation. (OB 40-41).

## V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(a).

Plaintiff asserts that the Rite Aid Defendants could only be responsible under §20(a) for "statements in Rite Aid press releases and in the 2015 Proxy [Statement]." (AB 55; *see also* Am.Compl. ¶¶145, 147). Because those documents fail to give rise to a §10(b) violation, Plaintiff's §20(a) claim must be dismissed. (OB 42).

# CONCLUSION

Plaintiff does not dispute that if the Amended Complaint is dismissed (as it should be), dismissal with prejudice is warranted and consistent with the PSLRA. (OB 43); *In re NAHC*, 306 F.3d at 1332-33.

Respectfully submitted,


/s/ Simoné L. Delerme
Brian P. Downey (PA 59891)
Of the Delaware Bar                         Simoné L. Delerme (PA 317120)
(admitted *pro hac vice*):                  **PEPPER HAMILTON LLP**
                                            Suite 200, 100 Market Street, Box 1181
Robert S. Saunders                          Harrisburg, Pennsylvania  17108-1181
Jennifer C. Voss                            (717) 255-1155
Cliff C. Gardner                            (717) 238-0575 (fax)
Jessica R. Kunz                             downeyb@pepperlaw.com
**SKADDEN, ARPS, SLATE,**                   delermes@pepperlaw.com
   **MEAGHER & FLOM LLP**
One Rodney Square, P.O. Box 636             *Attorneys for Defendants Rite Aid*
Wilmington, Delaware  19899-0636           *Corporation, John T. Standley, David R.*
(302) 651-3000                              *Jessick, Joseph B. Anderson, Jr., Bruce*
(302) 651-3001 (fax)                        *G. Bodaken, Kevin E. Lofton, Myrtle S.*
                                            *Potter, Michael N. Regan, Frank A.*
                                            *Savage and Marcy Syms*

DATED:  June 7, 2018

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the Rite Aid Defendants' Reply Brief in Further Support of Their Motion to Dismiss the Amended Complaint does not exceed 5,000 words.  The word count of the brief is 4,999 words (excluding the Table of Contents, Table of Authorities, and signature block).


DATED:  June 7, 2018                      *s/ Simoné L. Delerme*
                                          Simoné L. Delerme (PA 317120)

## CERTIFICATE OF SERVICE

I, Simoné L. Delerme, hereby certify that on June 7, 2018, a true and correct copy of the foregoing was filed through the Court's Electronic Case Filing (ECF) system and the following is registered to receive electronic notification of said filing through ECF:

> Benjamin M. Mather, Esq.
> Deborah R. Gross, Esq.
> Howard J. Kaufman, Esq.
> KAUFMAN, COREN & RESS, P.C.
> Two Commerce Square, Suite 3900
> 2001 Market Street
> Philadelphia, PA  19103
>
> Thomas G. Collins, Esq.
> BUCHANAN INGERSOLL & ROONEY PC
> 409 North Second Street, Suite 500
> Harrisburg, PA 17101
>
> Kristen R. Seeger, Esq.
> Nilofer I. Umar, Esq.
> SIDLEY AUSTIN LLP
> One South Dearborn Street
> Chicago, IL 60603

I also certify that a true and correct copy of the foregoing was served via First Class, U.S. Mail, postage prepaid, upon the following:

> Stuart A. Davidson, Esq.
> Mark J. Dearman, Esq.
> Christopher Chagas Gold, Esq.
> ROBBINS GELLER RUDMAN & DOWD, LLP
> 120 East Palmetto Park Road, Suite 500
> Boca Raton, FL 33432

Randall J. Baron, Esq.
David T. Wissbroecker, Esq.
ROBBINS GELLER RUDMAN & DOWD, LLP
655 West Broadway, Suite 1900
San Diego, CA  92101

**Attorneys for Plaintiff**


Reed R. Kathrein, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

Karl P. Barth, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101

**Additional Counsel for Plaintiff**


_s/ Simoné L. Delerme_
Simoné L. Delerme