**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JERRY HERING, | : | |
| Plaintiff, | : | 1:15-cv-2440 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| WALGREENS BOOTS ALLIANCE, INC., | : | |
| STEFANO PESSINA, and GEORGE R. | : | |
| FAIRWEATHER, | : | |
| Defendants. | : | |

## MEMORANDUM & ORDER

### October 24, 2018

Presently pending before the Court is Defendants', Walgreens Boots

Alliance, Inc., Stefano Pessina, and George R. Fairweather (collectively,

"Walgreens"), Motion for Judgment on the Pleadings, (Doc. 125), and Plaintiff's,

Jerry Hering ("Hering"), Joint Motion to Intervene by Lead Plaintiff and Putative

Class Members Douglas S. Chabot, Corey M. Dayton, and Joel M. Kling.  (Doc.

132).

## I.    BACKGROUND

The Court is well-acquainted with this case since its inception in December

2015.  The case arises from the failed merger of Rite Aid and Walgreens.  We have

detailed the facts of the matter in prior orders and need not fully repeat ourselves

here.  However, to briefly summarize the pertinent history, Hering filed an

Amended Complaint on December 11, 2017, (Doc. 83), alleging fraudulent

misrepresentations made by Rite Aid and Walgreens related to the merger from October 27, 2015, to June 28, 2017. (*Id.* at ¶ 1). These statements, Hering alleged, violated §§ 10(b) and 20(a) of the 1934 Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as Rule 10b-5 promulgated by the United States Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. (*Id.*). Rite Aid and Walgreens separately filed motions to dismiss for failure to state a claim on February 14, 2018. (Docs. 89, 93). After providing the parties additional time for briefing, we granted Rite Aid's motion and denied Walgreens' motion. (Doc. 111). With respect to statements made by Walgreens, however, we noted that only the statements made on and after October 20, 2016, were actionable.

On August 24, 2018, Walgreens filed the instant Motion for Judgment on the Pleadings, (Doc. 125), arguing that our limitation on which statements were actionable removed Hering's standing, as his last alleged purchase of Rite Aid stock occurred prior to the first actionable statement of Walgreens. In response, Hering, while not denying his sudden lack of standing, argues that the preferred remedy is to proceed to class certification and the identification of a proper class representative. Nevertheless, Herring filed the Joint Motion to Intervene, (Doc. 132), on September 6, 2018, as a protective measure. Both motions have been fully briefed and are ripe for review. (Docs. 126, 133, 134, 138, 139, 144).

## II.   DISCUSSION

Walgreens believes it is entitled to judgment on the pleadings because Hering lost standing when we dismissed his non-actionable claims. "A motion for judgment on the pleadings should be granted if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980))). "In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Id.* at 417-418 (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)).

In this case, Walgreens argues that Hering's loss of standing removes our Article III jurisdiction. "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.' We have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (citing *Muskrat v. United States*, 219 U.S. 346, 356-57 (1911). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Id.* (citing *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)).

Standing, at its "irreducible constitutional minimum," requires that the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Hering, in this case, last purchased Rite Aid stock before the actionable statements by Walgreens. Thus, Walgreens argues that even if Hering did suffer an injury, he cannot show causation and standing is not satisfied.

Walgreens further argues that Hering lacks statutory standing to sue for a § 10(b) violation pursuant to Rule 10b-5's private cause of action. "The plaintiff class under Rule 10b-5 is limited exclusively to actual sellers or purchasers of securities." *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754 (1975)). "There is no private right of action under Rule 10b-5 for mere holders of securities." *Id.* (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 80 (2006)). Again, because Hering did not purchase Rite Aid stock after the actionable statements, he was merely a "holder" of securities during the relevant period. Moreover, Walgreens suggests that Hering, without the ability to bring suit for a § 10(b) violation, necessarily lacks standing to bring a claim under § 20(a) because § 20(a) requires liability on a predicate securities violation. *See Shapiro v. UJB Fin.*

*Corp.*, 964 F.2d 272, 279 (3d Cir. 1992) (holding that the dismissal of § 10(b) claims make it "impossible" to hold defendants liable under § 20(a)).

Notably, Hering does not dispute Walgreens' contention that he lacks constitutional or statutory standing.  Rather, Hering argues that the Court should permit class certification to identify proper class representatives.  Hering primarily supports his argument with a case decided in the District of Maryland.  (Doc. 134 at 2) (citing *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F.Supp.3d 676 (D.Md. 2018)).  In *Emergent*, a securities fraud class action, the District Court had denied the defendant's motion to dismiss but noted that the case went "from puffery to fraud" when certain statements were made, implicitly acknowledging that some of the alleged misstatements were not actionable.  *Emergent*, 322 F.Supp.3d at 682.  The plaintiff filed a class certification motion, which resulted in a dispute between the parties as to the proper class period; the plaintiff wanted the entire class period reflected in its allegations, while the defendant wanted a shortened class period to reflect the Court's tacit limitation on what statements were actionable.  *Id.*  The Court decided that, although it had not "made any *final determinations* regarding the materiality and actionability of any of the specifically alleged misstatements, it does recognize, as it did at the . . . hearing on Defendants' Motion to Dismiss" that the

statement bringing the case "from puffery to fraud" was an appropriate starting point for the class period.  *Id.* (emphasis in the original).

On the basis of the shortened class period, the plaintiff lost his standing and could not serve as a class representative.  *Id.*  The District Court reasoned, however, that the plaintiff could still serve as Lead Plaintiff, at least in part, because the parties could "at a later date move this Court to expand the Class Period" to include earlier statements "should they later be found to be actionable based on information obtained in discovery."  *Id.*

The *Emergent* decision differs from the case at bar in two important ways. First, the Court plainly stated that it had not made any "final determinations" as to the actionability of any of the statements.  Thus, theoretically, the earlier statements that were excluded from the class period were still part of the case. Second, the Court's determination was simply that the *class period* should initially be set to cover less of a time period (and, thus, fewer statements), but that the class period would remain subject to modification depending on what facts might arise in discovery.  The Court ruled that the plaintiff was precluded from serving as a class representative, but not as a lead plaintiff.

The circumstances here are different.  In our Order on Walgreens' Motion to Dismiss, we *did* make a final determination on the non-actionable statements, and dismissed any claims based on statements made prior to October 20, 2016.  Those

statements are no longer part of this action.  Furthermore, we are not faced with deciding the proper class period in a motion for class certification; we are tasked with determining whether Hering's lack of standing eliminates our jurisdictional authority.  We therefore find the *Emergent* decision unpersuasive and unhelpful.

Hering next points to *In re Cigna Corp. Securities Litigation*, 459 F.Supp.2d 338 (E.D.Pa. 2006).  There, the District Court also permitted the plaintiff to serve as lead plaintiff, despite not being a proper class representative.  However, the issue before the Court was not whether the plaintiff had *standing*, but whether the plaintiff could adequately plead economic loss.  The difference between whether a plaintiff can ultimately succeed on a claim and whether a plaintiff has a legal right to bring or maintain a claim cannot be overstated.  Therefore, we also find *In re Cigna* unpersuasive.  Having carefully considered the parties' arguments, we ultimately agree with Walgreens based on the reasons that follow.

While it appears that Hering possessed initial standing to commence this litigation, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citations omitted).  Thus, as a general rule, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."  *Id.* at 72 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S.

472, 477-78 (1990)).  Because Hering purchased Rite Aid stock before the now

more clearly defined actionable statements, he does not have a legal right to bring

an individual Rule 10b-5 claim and, therefore, would appear to have lost his

personal stake in the outcome of the dispute.  That fact, however, does not end the

analysis.

"Article III mootness is more 'flexible' than other justiciability

requirements, especially in the context of class action litigation."  *Richardson v.*

*Bledsoe*, 829 F.3d 273, 278 (3d Cir. 2016) (citing *United States Parole Comm'n v.*

*Geraghty*, 445 U.S. 388, 400 (1980)). "A plaintiff who brings a class action

presents two separate issues for judicial resolution.  One is the claim on the merits;

the other is the claim that he is entitled to represent a class."  *Rosetti v. Shalala*, 12

F.3d 1216, 1226 (3d Cir. 1993) (quoting *Geraghty*, 445 U.S. at 404).  Accordingly,

"we have recognized that '[i]n the class action context, special mootness rules

apply' for determining at what point in time a named plaintiff must still have a

personal stake in the litigation to continue seeking to represent a putative class

action."  *Richardson*, 829 F.3d at 278-79 (quoting *Brown v. Phila. Hous. Auth.*,

350 F.3d 338, 343 (3d Cir. 2003)).

The law has evolved somewhat on this issue.  Clearly, where a class has

been certified, "mooting of the class representative's claims does not moot the

entire action because the class 'acquire[s] a legal status separate from the interest

asserted [by its named plaintiff].'" *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)).  Courts have even permitted actions to continue without a certified class, as long as a motion seeking certification had been filed.  In *Geraghty*, the United States Supreme Court held that a named plaintiff whose claims had been mooted nevertheless could appeal the denial of a class certification motion.  *Geraghty*, 445 U.S. at 404.  There, the Court reasoned that the named plaintiff's "stake in the vindication of his right to have a class certified is sufficient to establish the presence of a case or controversy with respect to the question of class certification." *Id.*  The Third Circuit further held that "so long as a plaintiff files a motion to certify a class when he still has a live claim, the mooting of that claim while the motion is pending precludes the court from reaching the merits but does not preclude it from deciding the certification motion." *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 305 (3d Cir. 2016) (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000)).  In such circumstances, a motion for class certification is said to "relate back" to the complaint, before the plaintiff's individual claims became moot.

More recently, the Third Circuit has applied the relation back doctrine in cases, like the case before us, where the plaintiff failed to even file a motion for class certification. "[C]ourts have often recognized that the relation back doctrine

applies to claims that are 'inherently transitory' or 'capable of repetition yet evading review.'"  *Richardson*, 829 F.3d at 279 (citing *City of Riverside v. McLaughlin*, 500 U.S. 44, 46 (1991); *Geraghty*, 445 U.S. at 398-99; and *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985)).  A third exception, colloquially termed the "picking off" exception to mootness, protects the integrity of class actions in situations where a defendant "picks off" named plaintiffs by mooting their private individual claims early in the litigation, such as through settlement offers, and thus cutting off the litigation before the class action procedure can unfold.  The *Richardson* court cited "the general principle that 'the class action process should be able to "play out" according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues."  *Id.* at 281 (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004)).  The Court further explained that the mere "filing of a certification *motion*, rather than the entry of a certification *order* . . . does nothing significant" and simply "indicates that the named plaintiff intends to represent a class if allowed to so do."  *Richardson*, 829 F.3d at 285 (quoting *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 707-08 (11th Cir. 2014)).  Because the filing of a class action complaint provides equal notice of the plaintiff's intent to represent a class, the absence of a motion seeking certification should not be fatal.  *Id.* at 288.

Although the Third Circuit's reasoning in *Richardson* may at first blush seem supportive of Hering here, the Court limited its holding to permitting relation back in the absence of a certification motion "[w]hen an individual plaintiff's claim for relief ***is acutely susceptible to mootness*** and it is clear from the complaint that the plaintiff is seeking to represent a class." *Id.* at 286 (emphasis added). The Court's focus, in other words, was to prevent the undesirable circumstance of a defendant subverting the class action process by repeatedly mooting any named plaintiff's individual claims. As the Court noted, the exception applies "when defendants are able 'effectively to prevent any plaintiff in the class from procuring a decision on class certification.'" *Id.* at 285 (quoting *Stein*, 772 F.3d at 706).

In the case before us, Hering's Amended Complaint plainly sets forth class action allegations, and it does appear that his claims were mooted before he could reasonably seek certification of a class. However, the mooting of his claims resulted from our dismissal of the non-actionable statements, not through any conduct of Walgreens, such as "picking off" named plaintiffs. His claims are not "inherently transitory," "capable of repetition, yet evading review," or "acutely susceptible to mootness." In short, none of the special class action mootness exceptions applies, and the "general rule" controls here: "the mooting of named a plaintiff's claims prior to class certification moots the entire case." *Id.* at 286.

11

Therefore, we find that Hering has lost standing not only with respect to the merits of his individual claim, but also with respect to seeking class certification.

Hering seeks to cure this jurisdictional defect with the Joint Motion to Intervene and arguing for both intervention as of right and permissive intervention. FED. R. CIV. P. 24(a) & (b). Under Rule 24(a) an applicant may intervene as of right if he demonstrates "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *United States v. Territory of V. I.*, 748 F.3d 514, 519 (3d Cir. 2014) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)). Under the permissive intervention of Rule 24(b), by contrast, a "court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." *Id.* (quoting Fed. R. Civ. P. 24(b)(1)(B)). "In exercising its discretion, the [district court] must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* (quoting FED. R. CIV. P. 24(b)(3)) (alteration in the original). "[D]istrict courts have broader discretion in making a determination about whether permissive intervention is appropriate as opposed to intervention as of right." *Id.* (citing *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992)).

12

Walgreens does not challenge any particular element under either mechanism.  Rather, Walgreens contends that Hering's lack of standing, and our consequent lack of jurisdiction, results in the intervenors not having any plaintiff with which to intervene.  We agree.

First, we find that the intervenors have failed to establish all the required elements of intervention as of right. The intervenors would need to show that their rights will be impaired or affected by the dismissal of the action.  In this case, however, as it was in *Applebaum v. State Farm Mut. Auto. Ins. Co.*, the intervenors' interests remain unharmed by dismissal for lack of standing because they are free to bring their claims in a new action: "[T]he disposition of this original litigation will not 'impair or impede [their] ability to protect' [their] interest[s] because [they are] not bound by the principle of res judicata under these circumstances."  *Applebaum v. State Farm Mut. Auto. Ins. Co.*, 109 F.R.D. 661, 665 (M.D.Pa. 1986) *aff'd* 806 F.2d 251 (3d Cir. 1986) (quoting *Nagle v. Commercial Credit Bus. Loans, Inc.*, 102 F.R.D. 27, 30-31 (E.D.Pa. 1983)).  The interests they would protect if permitted to intervene are the same interests they could protect in a separate action.  Thus, the third requirement for intervention as of right is not satisfied.

Furthermore, and more generally, a motion for intervention is not appropriate to cure a lack of standing.  *See McClune v. Shamah*, 593 F.2d 482, 486

(3d Cir. 1979); *Warden v. Crown Am. Realty Trust*, No. Civ. A. 96-25J, 1998 WL 725946, \*5 (W.D.Pa. Oct. 15, 1998), *aff'd* 229 F.3d 1140 (3d Cir. 2000); *Applebaum*, 109 F.R.D. 661, 664 (M.D.Pa. 1986), *aff'd* 806 F.2d 251 (3d Cir. 1986).  Hering argues that the above case law is distinguishable because plaintiffs in those cases lacked initial standing, whereas here, Hering had initial standing but lost standing after we dismissed the non-actionable statements.  However, we do not see a functional difference between a plaintiff who lacks initial standing and a plaintiff like Hering who loses standing after certain claims are dismissed.  In both circumstances, there is no viable claim for the only plaintiff in the case and, consequently, no "case" or "controversy" before the Court.  Thus, "after dismissal, there is now no entity remaining with which to intervene."  *Applebaum*, 109 F.R.D. at 663.  We find this rationale counsels against granting permissive intervention. Therefore, we will deny the Joint Motion to Intervene, but note that the intervenors are free to bring their allegations in a new action.

## III.   CONCLUSION

Consistent with the foregoing analysis, Walgreens' Motion for Judgment on the Pleadings, (Doc. 125), shall be granted, and Hering's Joint Motion to Intervene, (Doc. 132), shall be denied.  We will issue a separate order in accordance with this memorandum.